[826 NYS2d 244]

New York City Campaign Finance Board, Respondent, v Edwin O. Ortiz, Jr., et al., Defendants, and Kenneth T. Brennan et al., Appellants. New York City Campaign Finance Board, Appellant, v Richard Perez et al., Respondents.

First Department, December 19, 2006

### APPEARANCES OF COUNSEL

*Genova, Burns & Vernoia*, New York City (*Laurence D. Laufer* and *Jisha S. Vachachira* of counsel), for appellants in first above-entitled action.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Grace Goodman* and *Larry A. Sonnenshein* of counsel), for New York City Campaign Finance Board, respondent/appellant.

*Law Offices of Henry T. Berger*, New York City (*Henry T. Berger* of counsel), for Perez respondents.

### OPINION OF THE COURT

ANDRIAS, J.

The New York City Campaign Finance Act (Administrative Code of City of NY § 3-701 *et seq.* [the Act]) provides public matching funds to candidates running for nomination or election to the office of mayor, comptroller, public advocate, borough president or member of the City Council, and is administered by plaintiff New York City Campaign Finance Board, an independent, nonpartisan agency. In order to qualify for matching funds, participating candidates must comply with certain requirements, including restrictions on the sources and amounts of campaign contributions, limitations on the types and total amount of campaign expenditures, the filing of receipt and expenditure reports, responding to Board requests for documentation and other information, and submission to audits by the Board to verify compliance. If the Board determines that a portion of the funding was used for purposes other than "qualified campaign expenditures," it may seek repayment of the disqualified amount and impose a civil penalty up to $10,000 for any

violation of the Act or the implementing rules promulgated by the Board.

There seems, however, to be a loophole to the full and fair enforcement of the Act presented by the respective appeals, which are from orders entered in separate actions brought by the Board to recover public matching funds and civil penalties from the respective participating candidates, their principal campaign committees and the committees' treasurers for violations of the Act. While there is no dispute that candidates and treasurers are personally liable for any civil penalties assessed by the Board pursuant to Administrative Code § 3-711 (1), the question presented is whether Administrative Code § 3-710 (2) (b) exempts them from personal liability for repayment of any public funds that have been determined by the Board to have been used for purposes other than qualified campaign expenditures, thus limiting liability in such cases to the committee alone. Liability is similarly limited in the case of a payment in excess of the aggregate amount to which the candidate was eligible under section 3-710 (2) (a).

The Board contends that in addition to the principal campaign committees, the individual defendants are personally liable as well for repaying public matching funds given to the respective campaign committees, which the Board later found were undocumented and, therefore, disqualified campaign expenditures, and argues that they have failed to timely challenge the Board's final audits finding that the respective committees must repay $46,071 in the case of Community to Elect Edwin O. Ortiz, Jr. and $63,756 in the case of The Committee to Elect Ricky Perez.

For the following reasons, we find that pursuant to section 3-710 (2) (b), the individual defendants are not personally liable for the repayment of any public funds that have been determined by the Board to have not been used for qualified campaign expenditures. We also take this opportunity to call to the City Council's attention the apparent loophole reflected in section 3-710 (2) (a) and (b) and suggest that if this laudable legislation is intended to have its full desired effect, that body, if it so wishes, should address the matter.

It is fundamental that the petitioner in a CPLR article 78 proceeding be a person aggrieved by the administrative result. As recognized by the Board, a person is aggrieved by a determination when he knows or should have known that it "has its impact" upon him (*Matter of Edmead v McGuire*, 67 NY2d 714,

716 [1986]; *Matter of Eldaghar v New York City Hous. Auth.*, 34 AD3d 326 [2006]). Another principle of administrative law, repeated in Administrative Code § 3-710.5, requires that, before any determination by the Board and before assessing any penalty against a participating candidate, his or her principal committee or principal treasurer for a violation of the campaign finance law or rules, such party must be given written notice of the charges and an opportunity to appear before the Board to contest them.

The final determinations that triggered any article 78 statute of limitations regarding repayment of disqualified public matching funds were the Board's final audit reports, dated July 30, 2002 as to the Ortiz defendants, and January 14, 2003 as to the Perez defendants. Those audit reports, however, made no findings and assessed no penalties against the individual candidates or their campaign committee treasurers and certainly did not determine that they had to personally repay any disqualified campaign expenditures. Absent such a finding, the individual defendants were certainly not personally aggrieved parties as that term is generally understood. Nor is there any evidence in the record that they were given the requisite notice that they might possibly be found personally liable for the repayment of disqualified funds spent by their committees. Thus, while they may be precluded from contesting their personal responsibility for the civil penalties assessed by the Board in separate determinations, they can certainly contest their personal liability for repayment of public funds paid to their respective committees and later found not to have been used for qualified campaign expenditures.

The Board's argument that its draft audit reports and repeated notices to each political committee, candidate and treasurer specifically warned that the repayment and penalties could be assessed not only against the political committees but also against the candidates and the treasurers individually, is belied by the respective records. In *Ortiz*, the only correspondence included in the record is a letter dated July 30, 2002, the final audit report and final Board determination, all dated July 30, 2002, which conclude simply that "the Committee must repay"; a notice of outstanding penalties and pending Web site posting, dated August 19, 2002, referring only to the penalties assessed by the Board on July 30, 2002 ($420) and April 11, 2002 ($400) that remained outstanding and are not in issue on these appeals; a notice of overdue penalties and Web site posting, dated

September 16, 2002, stating that "as further described in the Final Audit Report sent to you with the Final Board Determination, the Committee must repay to the Board $46,071 . . . and failure to repay these funds may result in the assessment of additional penalties by the Board and civil litigation to compel payment."

The subsequent dunning letters, demanding payment and threatening that the candidates' names, but not their participating committees, would be posted on the Board's Web site, add nothing to the City's arguments that the individual defendants were on notice that they could personally be liable for repayment of disqualified funds pursuant to section 3-710 (2).

Nor does the actual posting of delinquent candidates' names on the Web site add any weight to such arguments. Such postings are authorized not by any of the enforcement sections of the Act (§§ 3-710, 3-711), but by Administrative Code § 3-708 (6), which provides that "the board shall publicize, as it deems appropriate, the names of candidates for nomination or election . . . who violate any of the provisions of this chapter," and is clearly intended to put pressure on such candidates to comply with the Act by publicizing their delinquency to the voting public, a tactic that presumably would be more effective if done before the election for which the public matching funds were provided rather than a year or two after the election, whether or not the delinquent candidate was elected.

With regard to the Board's determinations, its audit of Community to Elect Edwin O. Ortiz, Jr. found, in pertinent part, that the committee received $52,184 in public funds for the special election but failed to provide documentation in the form of cancelled checks or invoices for $46,071 of those funds. The Board advised the committee that it must provide documentation for those expenditures or repay the Board $46,071. When the committee did not respond to such finding, the Board determined that "the Committee must repay the Board $46,071." At the same time, the Board sent copies of the "Final Board Determination" to the individual defendants, advising that the Board had "determined that the Committee [*sic*] to Elect Edwin O. Ortiz (*the 'Committee'*) violated the New York Campaign Finance Act" and assessed penalties totaling $420 (in addition to another outstanding penalty of $400). The Ortiz defendants were further notified that:

"In addition, as further described in the Final Audit

Report enclosed with this Final Board Determination, *the Committee* must repay to the Board $46,071 because it did not adequately document qualified expenditures. Repayment of these funds is due with payment of the penalty, and failure to repay these funds may result in the assessment of additional penalties by the Board and civil litigation to compel payment'' (emphasis added).

With regard to the Board's final audit report of The Committee to Elect Ricky Perez, dated January 14, 2003, it found that the committee had received $63,756 in public funds for the primary election; that the committee failed to provide sufficient documentation for a sample of expenditures to demonstrate that the public funds received were used for qualified expenditures; that the committee did not respond to the Board's recommendation to "provide copies of bills and/or canceled checks to document $63,756 in qualified expenditures or repay the Board this amount"; and therefore, *"[t]he Committee* must repay $63,756 to the Board" (emphasis added). In an accompanying letter, the Board's Director of Auditing and Accounting advised the committee's treasurer that in addition to $8,376 in assessed penalties the "Board staff has determined that the Committee must repay the Board $63,756 to the Fund because it did not document any expenditures as qualified expenditures." If the Board did not receive the full amount of $72,132 by a certain date, "Richard Perez's name, all unpaid civil penalties, and the amount of public funds not returned will be posted on the Board's Web site and the Board may initiate a civil action to compel payment."

Nowhere in any of the foregoing final determinations, which are the only bases for the present actions, did the Board conclude that the individual defendants must personally repay the disqualified funds. Therefore, the Board has not sustained its burden, as the party asserting the statute of limitations, of proving that the individual defendants were personally aggrieved by the Board's audits requiring the committees to repay the disqualified funds.

The motion court in the *Perez* action properly concluded that the Board has failed to demonstrate that a final determination was reached as to the imposition of personal liability upon candidate Perez and his campaign treasurer, defendant Brennan. The motion court in *Ortiz* erred in finding to the contrary.

Relying upon the well-settled principle that an agency's interpretation of the statutes it is responsible for administering

should be given great deference and will be upheld, if not irrational or unreasonable, the motion court in *Ortiz* further held that defendants' argument that section 3-710 (2) (b) authorizes the Board to impose a repayment on a committee, but not on the candidate and the treasurer, contradicts long-established agency precedent, including the Board's long-standing interpretation of the relevant provisions of the Campaign Finance Act. However, the *Ortiz* court ignored the equally well-settled principle that where, as here, the question is one of pure statutory construction, dependent only on accurate apprehension of legislative intent, judicial review is less restricted and there is little basis to rely upon any special competence or expertise of the administrative agency (*see Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303, 312 [2005]). Moreover, although a long-standing interpretation of an agency charged with administering a statute is entitled to great weight unless manifestly wrong, such "commonsense" interpretation is of no avail unless the statute is ambiguous (*see generally* McKinney's Cons Laws of NY, Book 1, Statutes §§ 128, 129).

As opposed to Administrative Code § 3-711 ("Penalties"), which imposes personal liability upon participating candidates and their primary committees' treasurers and other agents for penalties assessed by the Board for a "violation" or "infraction" (a less serious failure to comply with the law) of the Act by the committee, section 3-710 ("Examinations and audits; repayments") clearly provides, in pertinent part (subd [2] [b]), that

> "[i]f the board determines that any portion of the payment made to a principal committee of a participating candidate from the fund was used for purposes other than qualified campaign expenditures, it shall notify such committee of the amount so disqualified and *such committee* shall pay to the board an amount equal to such disqualified amount" (emphasis added).

The differences in the relevant Administrative Code provisions could not be clearer: where the Board has determined that a participating candidate, his or her principal committee or the principal committee's treasurer has committed a violation or infraction, the candidate or treasurer shall be personally subject to civil penalties assessed by the Board; however, where the Board determines that payments made to a principal committee

of a participating candidate were used for purposes other than qualified campaign expenditures, such committee, but not the candidate or committee treasurer, is responsible for paying to the Board an amount equal to such disqualified amount.

Nevertheless, the Board seeks to enforce two of its final determinations and to enter judgment seeking repayment from the individual defendants. Its attempt to justify imposing personal liability on the participating candidates by asserting that the Act continually makes clear that funding is provided to the "candidate" is unconvincing, and interestingly neglects to explain—if such rationale is the basis for imposing personal liability on participating candidates—how it bolsters the claim that campaign treasurers are equally personally liable for repayment of disqualified campaign expenditures.

Contrary to the Board's emphasis on the legislative history of the Campaign Finance Act and selected sections which, it claims, make clear that funding is provided to "the candidate," Administrative Code § 3-704 (1) ("Qualified campaign expenditures") provides, in pertinent part: "Public funds provided under the provisions of this chapter may be used only for expenditures by a principal committee to further the participating candidate's nomination for election or election." Administrative Code § 3-705 ("Optional public financing") provides, again in pertinent part:

> "Each participating candidate for nomination for election or election in a covered election may obtain payment to his or her principal committee from public funds for qualified campaign expenditures, in accordance with the provisions of this chapter, and subject to appropriation.

> "1. No such public funds shall be paid to a principal committee unless the board determines that the participating candidate has met the eligibility requirements of this chapter. . . . *Such payment may be made only to the participating candidate's principal committee*" (emphasis added).

Clearly, regardless of generalized statements of legislative intent or otherwise, public financing of participating candidates' campaigns is to be done through each candidate's principal committee; the Act clearly requires that any public matching funds provided to a participating candidate are to be paid to, and accounted for by, the principal committee designated by the

candidate pursuant to Administrative Code § 3-703 (1) (e), which "shall be the only committee authorized by such candidate to aid or otherwise take part in the election(s) covered by the candidate's certification."

Thus, there is no reason for this Court to defer to the Board's Advisory Opinion No. 2003-3 and its purported commonsense interpretation of the Act to effectuate its purposes, or the Board's long-standing interpretation of the Act. Indeed, the fallacy of the Board's position is clearly evidenced by the fact that it unsuccessfully attempted to amend section 3-710 (2) (a) and (b) to incorporate such advisory opinion and commonsense interpretation by adding the requirement that the participating candidate (but not the committee treasurer), as well as the candidate's principal committee, shall repay any amount determined to have been used for purposes other than qualified campaign expenditures. However, the City Council, in adopting Local Law No. 58 (2004) of the City of New York, adopted many other amendments to the Act proposed by the Board, but omitted such proposed amendment.

In a footnote to its respondent's brief in *Ortiz*, the Board suggests that the "[City] Council's inaction on that proposal could simply mean that it deemed the statute clear enough, especially in light of the Board's longstanding interpretation and practice, that no amendment was needed." Suffice it to say that the kindest thing that can be said about such suggestion is that it is unconvincing. When the City Council, a body primarily consisting of former and future participating candidates, wanted to impose personal liability on participating candidates and treasurers of the candidates' principal committees for penalties assessed by the Board against them, it clearly did so (*see* § 3-711 [1]). When it wanted to limit responsibility for repayment of unspent matching funds or disqualified campaign expenditures to the participating committee and not its treasurer or the participating candidate, it did so just as clearly (*see* § 3-710 [2] [a], [b]).

This Court cannot by implication supply in section 3-710 (2) (b) a provision that, we might reasonably suppose, the City Council intended to omit; and its failure to include a requirement that the participating candidate or the treasurer of the candidate's principal committee be personally responsible for repayment of disqualified campaign expenditures may be construed as an indication that such exclusion was intended (*see generally* McKinney's Statutes § 74). The Board's argument

that it is inconceivable the City Council would have intended to allow a candidate (or treasurer) to escape responsibility for violating the law by not requiring him or her to be responsible for repayment of misused public funds is belied by the Council's decision not to adopt the additional language when the Board specifically asked it to do so.

Likewise, to the extent that the Board seeks to impose personal liability on the individual defendants for repayment on the basis of certifications they signed as a condition for qualifying to receive public election funds, acknowledging that they understood they "may be jointly and severally liable for the repayment of public funds and/or civil penalties pursuant to Sections 3-710 and 3-711 of the Act," neither the Board nor this Court may expand or add to the clear and unambiguous language of section 3-710, which must be read and given effect as it was written by the City Council, not as the Board or the courts think it should or would have been written if the City Council had envisaged all of the problems and complications which might arise in the course of its administration (*Lawrence Constr. Corp. v State of New York*, 293 NY 634, 639 [1944]). Similarly, there is no authority for any assertion that such certifications put the individual defendants on notice for statute of limitations purposes, that they could be held personally liable if their campaign did not comply with the rules of the matching funds program.

The Board also mentions its rule (52 RCNY 1-02) defining a "participant," ostensibly to give weight to its conclusion that participating candidates and committee treasurers, as "participants," are on notice that they are personally liable for both penalties and repayment of public funds unused or misspent; however, nowhere in section 3-710 or section 3-711 is the word "participant" used, and the terms used ("participating candidate" and "principal committee") are clearly defined in Administrative Code § 3-702 (1) and (2). Again, fundamental principles of statutory interpretation instruct us that where there is a conflict between a statute and an administrative rule or regulation promulgated pursuant to that statute, the wording and the meaning of the statute prevails (*see generally Matter of Weil, Gotshal & Manges v O'Cleireacain*, 83 NY2d 591, 596 [1994] ["Since we find the regulation at issue in clear conflict with the conceded legislative intent, we need not reach the question of deference"]; *Matter of Gross v New York City Alcoholic Beverage Control Bd.*, 7 NY2d 531, 540 [1960] ["the

Authority is without power to adopt a scheme of its own to deal with applications for licenses and employ it as a substitute for that provided by the Legislature"]).

Thus, whether done in the name of good government or public integrity, or other motive to protect the public fisc, the enactment of the New York City Campaign Finance Act was solely within the province of the City Council, which has the power to determine its provisions, and neither this nor any other court may add additional requirements or responsibilities that it deems more beneficial. As cogently stated by the motion court in *Perez*: "Of course, a court cannot amend a statute by adding words that are not there."

Finally, since the Board is the body empowered to determine violations and to assess civil penalties (*see* §§ 3-710.5, 3-711), the court in *Ortiz* erred in granting the Board's request to impose an additional $2,500 penalty against the defendants for their refusal to repay the $46,071 in matching funds and for asserting frivolous defenses in the enforcement action against them. Instead, even if the court deemed additional penalties appropriate, it should have remanded the matter to the Board to make such determination.

Accordingly, in *Ortiz*, the judgment of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered April 1, 2005, which awarded plaintiff a total sum of $61,110.90, should be modified, on the law, to vacate judgment with respect to repayment by the individual defendants of $46,071 pursuant to Administrative Code § 3-710 (2) (b) and, as to all defendants, the imposition of $2,500 in additional penalties, and otherwise affirmed, without costs.

In *Perez*, the order of the Supreme Court, New York County (Diane A. Lebedeff, J.), entered April 13, 2005, which granted defendants' motion for partial summary judgment dismissing plaintiff's claim that the candidate repay $63,756 to plaintiff pursuant to New York City Administrative Code § 3-710 (2) (b), and denied plaintiff's cross motion for summary judgment against all defendants on the ground that their failure to assert a timely challenge under CPLR article 78 to plaintiff's penalty and repayment determinations (January 8 and 14, 2003) precludes them from contesting such determinations in this enforcement action, should be modified, on the law, to the extent of granting plaintiff summary judgment only on its claim for payment of the $8,376 in civil penalties assessed, plus interest, and otherwise affirmed, without costs.

BUCKLEY, P.J., SAXE and SULLIVAN, JJ., concur.

In *Ortiz*, judgment, Supreme Court, New York County, entered April 1, 2005, modified, on the law, to vacate judgment with respect to repayment by the individual defendants of public matching funds and, as to all defendants, the imposition of certain additional penalties, and otherwise affirmed, without costs.

In *Perez*, order, Supreme Court, New York County, entered April 13, 2005, modified, on the law, to the extent of granting plaintiff summary judgment only on its claim for payment of civil penalties assessed, and otherwise affirmed, without costs.