[870 NYS2d 293]

In the Matter of ESPADA 2001 et al., Respondents-Appellants, v NEW YORK CITY CAMPAIGN FINANCE BOARD, Appellant-Respondent.

First Department, December 30, 2008

### APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Elizabeth S. Natrella, Leonard Koerner* and *Hillary Weisman* of counsel), for appellant-respondent.

*Genova, Burns & Vernoia*, New York City (*Laurence D. Laufer* and *Jisha V. Dymond* of counsel), for respondents-appellants.

### OPINION OF THE COURT

Saxe, J.

This CPLR article 78 proceeding raises the issue of whether penalties may be properly assessed by respondent New York City Campaign Finance Board against a candidate and the campaign treasurer as well as the campaign committee itself for various violations of the New York City campaign finance laws. Supreme Court held that penalties for certain violations could properly be imposed on the campaign committee only and that

penalties for other violations could be imposed on the candidate as well, but that the treasurer could be liable for penalties only if he personally engaged in the rule violations. We disagree and, for the reasons that follow, reverse and reinstate in its entirety the determination of respondent Board.

A candidate, having chosen to participate in New York City's campaign finance program, must agree to abide by the program's requirements under the New York City Campaign Finance Act (Administrative Code of City of NY § 3-701 *et seq.*) and the rules enacted by the Campaign Finance Board pursuant to the Act (Rules of City of NY Campaign Fin Bd [52 RCNY] § 1-01 *et seq.*), which include filing obligations and limitations on spending and contributions. Having opted to participate, a candidate must comply with all the program's requirements even if the candidate ultimately fails to qualify for or accept public funds under the program (Administrative Code of City of NY § 3-703 [11]).

On March 26, 2001, petitioner Pedro Espada, Jr. opted to participate in the New York City campaign finance program as a candidate for Bronx Borough President in the 2001 elections. He submitted the required candidate certification form designating Espada 2001 as his principal committee and petitioner Kenneth Brennan as treasurer of the committee. In the certification, both Espada and Brennan acknowledged that they understood that "failure to abide by the requirements of the Act or rules may result in the imposition of such penalties as are provided in Section 3-711 of the Act and other applicable law or rules," and that the candidate, the treasurer and the principal committee "may be jointly and severally liable for the repayment of public funds and/or civil penalties pursuant to Sections 3-710 and 3-711 of the Act." The Espada campaign applied formally for matching funds on July 31, 2001 by submitting a disclosure statement.

The Campaign Finance Board conducted a pre-election audit of the Espada 2001 campaign and found indications of a number of campaign finance law violations. Among these were: (1) A large number of individual contributions received by the campaign were from employees of Soundview Health Care Network, a not-for-profit corporation owned and operated by petitioner Espada; the Board asked for documentation establishing that these contributions were made out of the employees' personal funds and the employees received no reimbursement from Soundview. (2) Expenses related to a van covered with cam-

paign posters for Espada had not been reported in petitioners' statements. (3) Expenses relating to a purported newsletter entitled "The Bronx-New York Tribune," which was owned by the candidate and appeared to amount to campaign literature, were not documented in petitioners' submissions. (4) Expenditures for joint campaign activities featuring both Espada and his son, an incumbent City Council member running for reelection, such as the use of a poster and flyer supporting both candidates, were not addressed in petitioners' submissions to the Board.

On August 16, 2001, the Board voted provisionally to deny the campaign $173,000 in matching funds. It directed the campaign to provide additional information and documentation responsive to the above-cited concerns. After a hearing on August 30, 2001, the Board concluded that the campaign's "undisclosed use of corporate contributions and repeated failures to provide full disclosure" reflected a lack of compliance, and payment of matching funds was denied.* Espada lost the 2001 primary election.

### The Post-Election Audit

On June 9, 2003, the Board issued a draft report of its post-election audit, setting forth a number of problems, including the committee's acceptance of excess aggregate contributions from the candidate in a variety of forms, including loans that were not repaid and in-kind contributions from entities controlled by the candidate, and information that employees of Soundview, a business owned by the candidate, who were reported to have made cash campaign contributions, had been reimbursed by their employer for their purported contributions.

Before the Board proceeded with the remaining steps in issuing the final audit report, a criminal prosecution was brought, on January 16, 2004, against a number of Soundview employees, some of whom had official roles in the campaign, charging a scheme to defraud as well as grand larceny. Ultimately, three Soundview senior managers pleaded guilty to the scheme to defraud stemming from Soundview's use, for the benefit of the campaign, of governmental funds that Soundview had received for its WIC and HIV programs; a fourth Soundview manager pleaded guilty to grand larceny in the third degree. In addition,

---

* The campaign's CPLR article 78 challenge to the provisional denial of matching funds was dismissed (*see Espada 2001 v New York City Campaign Fin. Bd.*, Sup Ct, NY County, Sept. 7, 2001, index No. 115778/01, *appeal dismissed* 302 AD2d 299 [1st Dept 2003]).

two other Soundview employees were convicted of perjury for falsely denying before a grand jury that they provided services to the campaign by circulating petitions during company time.

The Penalty Proceeding and Board Determination

On October 20, 2005, after reviewing the Espada campaign's responses to the draft audit report and the public documents relating to the Soundview criminal convictions, the Board initiated the formal penalty proceeding against the Espada campaign, enumerating 22 apparent violations of the Act and rules and making penalty recommendations.

Some of the violations involved contributions by the candidate exceeding the $10,500 statutory limit (Administrative Code § 3-703 [1] [f], as amended by Local Law No. 48 [1998] of City of NY § 1). These included purported loans from the candidate to the campaign totaling $192,018 that were not repaid; in view of the rule that a loan not repaid by the date of the election is considered a contribution (Administrative Code § 3-702 [8]; 52 RCNY 1-05 [a]), the Board treated that total amount as a contribution by Espada. Another deemed contribution in excess of the Act's limits arose from a debt owed by the campaign to the Community Leadership Network, apparently related to campaign workers, which was originally reported as an outstanding liability of $230,000 and subsequently reduced to $75,881. The rules state that a creditor who extends credit to a campaign beyond 90 days is considered to have made a contribution of that amount to the campaign, unless the creditor has made a commercially reasonable attempt to collect the debt, and that debts forgiven or settled for less than the amount owed are also deemed contributions (52 RCNY 1-04 [g] [4], [5]; 1-05 [j]). Other in-kind contributions considered to exceed the Act's limits included the cost of four issues of the Bronx-New York Tribune, treated by the Board as campaign literature, which were printed and distributed by Espada at a cost of more than $12,000.

As to cash contributions from individuals, the Board stated that $46,182 of the reported $122,152 in cash contributions was received from employees of organizations controlled by Espada, such as Soundview; while the committee submitted affidavits from 63 out of 173 contributors affirming that their contributions were made from personal funds that were not reimbursed, the Board had received information that employees were reimbursed for their contributions.

The Board's final audit report and final determination formally found 22 violations and assessed $61,750 in penalties

jointly and severally against the candidate, the treasurer, and the committee. The three commenced this CPLR article 78 proceeding to challenge the Board's determination.

Supreme Court granted the article 78 petition in part and granted the Board's counterclaim for enforcement of the imposed penalties in part (15 Misc 3d 647 [2007]). It rejected petitioners' arguments that the Board was barred from enforcing its penalties by the three-year statute of limitations and impermissibly broadened the scope of its final post-election audit report by making findings regarding the "Campaign," since the draft audit took issue solely with the "Committee." The court then granted the Board's counterclaim to the extent of finding petitioners Espada and Espada 2001 jointly and severally liable for civil penalties totaling $39,700 for various enumerated violations. It further found the committee alone liable for penalties of $11,000 based upon two specific violations. The court annulled the Board's determination that treasurer Brennan was liable for any penalties, holding that a treasurer may be subject to a civil penalty only if he or she has personally violated a provision of the Act or a Board rule. In addition, the court annulled the determination with respect to a number of other individual violations.

## DISCUSSION

### Statute of Limitations

Initially, we agree with Supreme Court that CPLR 214 (2) does not render the Board's enforcement claim untimely.

CPLR 214 (2) applies a three-year limitations period to actions "to recover upon a liability, penalty or forfeiture created or imposed by statute." The statute requires that the action be commenced within three years of the imposition of the "penalty." Thus, the claim accrued when the Board's final determination was issued in 2006 (see e.g. State of New York v Uzzillia, 156 AD2d 261 [1989]), not, as petitioners would have it, back in 2001, when the Board denied the Committee matching funds. To the extent petitioners argue that the Board improperly delayed in making its determination of violations or assessment of penalties, they fail to show that the time taken by the Board was improper or that petitioners were prejudiced by it.

### Treasurer's and Candidate's Liability

We hold that the Board properly determined that treasurer Brennan and candidate Espada were jointly and severally liable for the campaign finance violations and the assessed

penalties under Administrative Code § 3-711. Although we do not agree with the Board's suggestion that these individuals conceded joint liability for *any* penalties imposed against the campaign simply by signing certification acknowledging that he "*may be* jointly and severally liable for the repayment of public funds and/or civil penalties pursuant to Sections 3-710 and 3-711 of the Act" (emphasis added), we nevertheless conclude that the law supports the imposition of penalties against them. The absence of a showing that Brennan personally committed any violation of the Act or rules is not determinative.

As applicable to the 2001 election, Administrative Code § 3-711 (1) (as amended by Local Law No. 69 [1990] of City of NY § 10) provided that:

> "Any participating candidate whose principal committee fails to file in a timely manner a statement or record required to be filed by this chapter or the rules of the board in implementation thereof or who violates any other provision of this chapter or rule promulgated thereunder, and any principal committee treasurer or any other agent of a participating candidate who commits such a violation, shall be subject to a civil penalty in an amount not in excess of ten thousand dollars."

This Court has previously observed, *in unequivocal language*, that this provision "imposes personal liability upon *participating candidates and their primary committees' treasurers* and other agents *for penalties assessed by the Board for a 'violation' or 'infraction' . . . by the committee*" (*see New York City Campaign Fin. Bd. v Ortiz*, 38 AD3d 75, 81 [2006] [emphasis added]). We recognize that this particular point was not the focus of the ruling in *Ortiz*, which involved liability for repayment of public funds under section 3-710. However, the quoted observation was presented in the *Ortiz* decision as established and indeed unquestioned law on the precise question now before us and as such must carry considerable weight in guiding our subsequent determinations (*see* 28 NY Jur 2d, Courts and Judges § 213).

Even if we treat this statement of law in *Ortiz* as dictum and the question before us as undecided, and therefore turn to construing the language of the Act, the treasurer must in any event be held jointly liable with the candidate and the committee.

We disagree with Supreme Court's reading of section 3-711. We do not view the provision as limiting its application to the

treasurer of a principal committee to circumstances in which he or she has personally violated the Act or rules; nor do we agree that the provision limits the candidate's liability for the conduct of the committee to circumstances in which the committee has failed to timely file required statements and records. Reading the provision closely and in the context of the Act as a whole, we agree with the Board's interpretation, under which both the candidate and the treasurer are liable for violations by the principal committee.

Moreover, assuming arguendo that the language of section 3-711 may be considered ambiguous as to the candidate's and the treasurer's liability for violations, petitioners' argument must still fail. Where statutory language suffers from some "fundamental ambiguity," courts routinely defer to an agency's construction of a statute it administers (see Matter of New York City Council v City of New York, 4 AD3d 85, 97 [2004], lv denied 4 NY3d 701 [2004] [internal quotation marks and citations omitted]). In such cases, the administering agency's interpretation is entitled to great deference, and must be upheld if reasonable (see Matter of Howard v Wyman, 28 NY2d 434, 438 [1971]; Matter of Partnership 92 LP & Bldg. Mgt. Co., Inc. v State of N.Y. Div. of Hous. & Community Renewal, 46 AD3d 425, 429 [2007], appeal dismissed 10 NY3d 928 [2008]). The Board has consistently construed the New York City Campaign Finance Act (Administrative Code of City of NY § 3-701 et seq.) as holding the candidate, treasurer, and principal committee jointly and severally liable for any penalties assessed against the campaign for violations of the Act and rules committed by the campaign (see e.g. New York City Campaign Fin. Bd. v Ortiz, 38 AD3d at 81; New York City Campaign Fin. Bd. v Lewis, 2004 NY Slip Op 30308[U] [2004, James, J.]; New York City Campaign Fin. Bd. v Villaverde, 2002 NY Slip Op 30100[U] [2002, Stallman, J.]; New York City Campaign Fin. Bd. v Kramer, Civ Ct, NY County, April 14, 2005, Singh, J., index No. SCNY 3907/04). Since this interpretation is not manifestly wrong, it is entitled to great deference by the courts.

Furthermore, as a matter of policy, this interpretation, holding the candidate and the treasurer personally liable for violations by the committee, is not inappropriate. Indeed, as the Board points out, a contrary construction would nullify the intent of the program, since penalty proceedings generally occur only after the election, so by the time penalties are assessed, a campaign committee will often have been terminated and

emptied of funds, rendering such penalties pointless unless the candidate and treasurer remain liable.

Merits of the Violations Findings

Initially, the Board's ultimate determination with respect to the campaign finance violations committed by Espada's principal committee is supported by more than substantial evidence and is not arbitrary and capricious (*see generally Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222 [1974]).

We reject petitioners' challenge to the Board's findings regarding violations 8 and 11 through 16 and reverse Supreme Court's dismissal of them. Violation 8 related to a failure to provide copies of cancelled checks representing 25 loans from Espada, as called for by the Board's draft audit, which the Board properly found to violate the program's record-keeping requirements (*see* 52 RCNY 4-01 [g] [a participating campaign must make loan documentation records available to the Board upon request]). Violations 11 through 16 involved the campaign's acceptance of and failure to report various in-kind contributions in the form of outstanding liabilities based on services provided to the campaign by vendors. It was not arbitrary and capricious for the Board to penalize the campaign for failing to provide documentation showing that these loans could not be repaid, as the Board requested, particularly given the absence of evidence (invoices, bills) that any of the vendors made a commercially reasonable attempt to collect the monies owed by the campaign.

Similarly, the court erred in dismissing violations 19 and 20, relating to petitioners' failure to provide certain financial documents of Espada 2000, Espada's principal committee when he ran for the State Senate. 52 RCNY 3-02 (f) (5) requires candidates to comply with Board requests for financial records of political committees authorized by a participant "that are not involved in a covered election [in which the candidate is currently a participant]," as well as provisions that grant the Board broad audit and investigatory authority (Administrative Code § 3-703 [1] [d], [g]; § 3-710 [1]). Thus, the court should have deferred to the Board's penalty determinations for the campaign's failure to comply with the requests, which were not arbitrary and capricious.

Violation 3 was for accepting from the candidate more than $203,518 in excess of the $10,500 candidate contribution limit, including loans from Espada that were not repaid and goods

and services from entities, including Soundview, that the Board deemed "a single source with the candidate." This was correctly determined to constitute a violation of the provisions of the Act (*see* Administrative Code § 3-703 [1] [f]; § 3-702 [8]). The court correctly rejected petitioner's statutory argument that section 3-702 (8) exempts payments made by the candidate from the definition of contribution, and found that these loans from Espada to his campaign exceeded the contribution limit. However, the court improperly found that because it was the committee and not the candidate that accepted the loan, the candidate was not liable. Accordingly, all three petitioners are liable for the violation, and the Board's determination with respect to violation 3 is reinstated as against both Espada and Brennan.

Violation 21 concerned the campaign's violation of an advisory opinion of the Board prohibiting additional campaign spending between the originally scheduled primary election date of September 11, 2001 and the rescheduled date of September 25, 2001. Petitioners argued not that they lacked notice of the prohibition, but that they were not bound by this advisory opinion, as section 3-711 does not provide for the imposition of a civil penalty for the violation of an advisory opinion. Supreme Court upheld the violation, albeit against the committee alone. We agree with Supreme Court that although most advisory opinions do not have the force of rules, this opinion, adopted in light of the emergency rescheduling of the 2001 primary in order to prevent any candidate from gaining an advantage as a result of the September 11th attacks, must be treated as having a binding effect. Given petitioners' tacit acknowledgment of their awareness of the opinion, the Board's determination that petitioners are liable for violation 21 should therefore be reinstated as well, as against all petitioners.

Petitioners' challenges to violations 2, 4, 5, 7, 18 and 22 were properly rejected by Supreme Court; the Board's determination with respect to each violation is supported by substantial evidence in the record and is not arbitrary and capricious.

Consequently, the Board's determination of liability against all three petitioners for all the violations is reinstated.

Finally, we agree with Supreme Court that the Board did not impermissibly broaden the scope of its investigation by addressing the campaign, defined as the three petitioners collectively, in the final post-election audit although the draft audit had referred to the committee. Petitioners were given more than adequate notice that the Board would consider violations and

penalties against the candidate and the treasurer, as well as the committee.

Accordingly, the judgment of the Supreme Court, New York County (Edward H. Lehner, J.), entered May 4, 2007, dismissing respondent's counterclaim for penalties as against petitioner Kenneth Brennan, and granting the petition to the extent of annulling certain individual violations and the penalties imposed therefor, should be modified, on the law, so as to reinstate in its entirety respondent's determination finding petitioners in violation of the campaign finance program and assessing $61,750 in penalties, and as so modified, affirmed, without costs.

TOM, J.P., WILLIAMS, CATTERSON and MOSKOWITZ, JJ., concur.

Judgment, Supreme Court, New York County, entered May 4, 2007, modified, on the law, so as to reinstate in its entirety respondent's determination finding petitioners in violation of the campaign finance program and assessing $61,750 in penalties, and as so modified, affirmed, without costs.