OPINION OF THE COURT
James A. Yates, J.
In this CPLR article 78 proceeding, petitioners challenge a determination by the New York City Campaign Finance Board *660 assessing personal liability for “unspent” campaign funds.[1] Petitioner C. Virginia Fields was a candidate for mayor in the 2005 Democratic primary election. Milton Wilson was the treasurer of New Yorkers for Fields, Ms. Fields’ 2005 campaign committee (committee).
The Board assessed three sums against the Fields campaign:
First, the Board found that the committee was required to return $330,420 which the Board had overpaid when it matched contributions. Petitioners do not challenge this finding.
Second, the Board assessed a penalty of $36,767 against the campaign, i.e., the committee, Mr. Wilson and Ms. Fields. Petitioners do not challenge this finding.
Finally, the Board decided that Ms. Fields, Mr. Wilson, and the committee are jointly and severally liable for $180,597 in unspent funds, i.e., the amount by which total receipts ($3,286,393), which is the aggregate of both private contributions ($1,826,757) and public funds ($1,459,636), exceeded approved expenditures ($3,105,796). However, included in the calculation of receipts is the $330,420 overpayment, which is to be returned by the committee. The Board acknowledges that receipts exceed expenditures only if the overpayment continues to be counted as a receipt. If the overpayment is returned by the committee, then the adjusted public fund contribution is only $1,129,216 and total receipts would equal only $2,955,973, which is less than the amount of approved expenditures. If the overpayment is returned by the committee there would be no “unspent” funds and petitioners would have no obligation remaining. Nonetheless, the Board seeks to impose personal liability upon petitioners Fields and Wilson for unspent funds unless and until the committee returns the overpayment.
The Fields campaign (petitioners and the committee) challenged the finding with a Board Rules § 5-02 (a) petition on September 28, 2007. While agreeing to the overpayment calculation, the campaign claimed to have paper work demonstrating that certain unrecognized expenditures were proper, thereby reducing the unspent funds calculation. The Board, however, refused to consider the additional proof under Board Rules § 5-02 (a) (2), finding that no good cause existed for a “late” submis *661 sion of the documentation. Petitioners offered proof that a necessary accountant became unavailable due to a family death and that computer-related problems delayed the submission of additional documentation.[2] The Board, nonetheless refused to find good cause for the delay and did not recognize the proffered documentation. In its article 78 petition, the Fields campaign seeks to set aside the Board’s finding of personal liability for the $180,597 in unspent funds.
For the following reasons, the court finds that Ms. Fields and Mr. Wilson are not personally liable for the $180,597, pursuant to Administrative Code of the City of New York § 3-710 (2) (b) and (c); § 3-711 (1), and Board Rules § 5-02 (a) (2).
Background
Through the New York City Campaign Finance Act (Administrative Code of City of NY § 3-701 et seq.), the Board provides public matching funds to candidates running for mayor, comptroller, public advocate, borough president, and city council member.[3] To qualify for matching funds, participating candidates must comply with certain requirements. These include source restrictions, campaign contribution limitations, campaign expenditure limits, receipt and expenditure report filings, responses to Board requests for documents, and submissions to Board audits to verify compliance. If the Board determines any portion of the funding was for purposes other than qualified campaign expenditures, it may seek repayment of the disqualified amount. *662 Additionally, the Board may impose a civil penalty of up to $10,000 for any Act or Board Rules violation.
The Board’s request for repayment from the Fields campaign began with the 2001 elections. That year, Ms. Fields ran successfully for Manhattan Borough President. She authorized “Fields for New York” as her campaign committee (2001 committee). Her campaign treasurer was Mr. Wilson. The 2001 committee received $444,452 in public funds for that election. In the 2001 campaign’s final audit report, dated February 24, 2004, the Board ordered the 2001 committee to repay $92,547. Specifically, the Board assessed $80,678 in unspent campaign funds and $11,869 in penalties.
Board Rules § 5-01 (f) (3) provides that a campaign cannot receive public funds if a candidate has an outstanding debt to the Board from a prior campaign. In order to qualify for public funding in 2005, Ms. Fields needed to pay the 2001 debt. On October 7, 2004, prior to application for any public matching funds for the 2005 race, the Fields campaign transferred money from private receipts raised for the 2005 mayoral campaign to the 2001 committee to pay the $92,547 debt. The transfer was lawful under the Election Law and the Administrative Code.
Almost eight months later, on May 31, 2005, Ms. Fields submitted a certification form to receive public matching funds for her mayoral run in the 2005 Democratic primary election. Ms. Fields designated the committee as her principal committee, and listed Mr. Wilson as the committee’s treasurer. Based on its review of the campaign disclosure statements, the Board made three separate public funds payments, on August 4, 2005, August 14, 2005, and September 9, 2005 (prior to the Sept. 13, 2005 primary election). These payments totaled $1,459,636. This amount reflects a four-to-one match for qualified private contributions raised by the committee. However, it was later determined — and both sides agree — that the $93,000 transfer should have been deducted from the calculation of available qualified receipts before the match was made.[4] In essence, contributions are no longer receipts available for matching funds in the 2005 campaign if they are used to pay a preexisting 2001 debt. Accordingly, the Board overpaid by $330,420 (after adjustments unrelated to this opinion). The Board should have paid $1,129,216.
*663 Following the 2005 general election, the Board conducted a routine audit of the Fields campaign. On December 13, 2006, the Board sent a draft audit report to the Fields campaign. The report found that the campaign owed $187,637 in unspent campaign funds, and $337,340 due to a public funds overpayment.[5] The campaign was to respond by January 25, 2007. However, the campaign requested two extensions, first to February 8, 2007, and later to March 8, 2007. The Board granted both extensions. Ultimately, the campaign did not respond to the draft audit report by the March 8th deadline, nor did they request additional time.
On June 11, 2007, the Board sent a notice to the committee containing a $189,028 demand in penalties and payments. The Board wrote that if it received the campaign’s response to the draft audit report no later than June 25, 2007, the campaign would receive substantial penalty reductions. The campaign submitted a response, dated June 26, 2007, to the draft audit report. Accordingly, at the July 20, 2007 Board meeting, the Board reduced the assessment to $70,567.
On July 27, 2007, the Board issued the final audit report. It stated that the committee was liable for $337,340 in overpayments and that Ms. Fields, Mr. Wilson, and the committee were jointly and severally liable for the $180,597 in unspent funds and penalties if the overpayment was not refunded.
On September 28, 2007, the Fields campaign filed a Board Rules § 5-02 (a) petition challenging both the $337,340 and $180,597 obligations. On December 13, 2007, Mr. Leo Glickman, counsel to the campaign, appeared before the Board. The Board rejected the petition that day, and issued a final determination letter on December 19, 2007.
Thereafter, Ms. Fields, Mr. Wilson, and the committee filed this article 78 petition challenging the $180,597 for which they are personally liable. They ask the court to reduce the $180,597 by three amounts. First, they contend the Board wrongly found them personally liable for $93,000 used to pay the 2001 campaign debt. Second, they argue that the Board wrongly classified $74,825 as unspent campaign funds. Third, they assert the Board incorrectly identified $40,361 as improper postelection expenditures. They claim that the Board improperly refused to consider proof that the $74,825 and $40,361 expenditures are proper.
*664 Discussion
Three questions arise: Are a candidate and treasurer personally liable for unspent funds? Can the money raised to pay the $93,000 transfer be counted as a “receipt” for the 2005 campaign while, at the same time, the expenditure is disallowed under the “unspent” fund calculation? Should the Board have considered the Fields campaign’s additional documents?
A. Personal Liability
Administrative Code § 3-710 (2) (a), (b) and (c) define three kinds of assessments for repayment which may be made by the Board: return of overpayments made by the Board, repayment for disqualified expenditures, and return of unspent public funds up to the amount of public funds received by the committee.
Administrative Code § 3-710 (2) (a) codifies liability for over-payments of public matching funds. It states:
“If the board determines that any portion of the payment made to the principal committee of a participating candidate from the fund was in excess of the aggregate amount of payments which such candidate was eligible to receive pursuant to this chapter, it shall notify such committee and such committee shall pay to the board an amount equal to the amount of excess payments.” (Id.)
Administrative Code § 3-710 (2) (b) describes liability for funds used for disqualified campaign expenditures. It states:
“If the board determines that any portion of the payment made to a principal committee of a participating candidate from the fund was used for purposes other than qualified campaign expenditures, it shall notify such candidate and committee of the amount so disqualified and such candidate and committee shall pay to the board an amount equal to such disqualified amount.” (Id.)
Administrative Code § 3-710 (2) (c), regarding unspent funds, provides:
“If the total of contributions, other receipts, and payments from the fund received by a participating candidate and his or her principal committee exceed the total campaign expenditures . . . such candidate and committee shall use such excess funds to reimburse the fund for payments received by such committee from the fund.” (Id.)
In New York City Campaign Fin. Bd. v Ortiz (38 AD3d 75 [1st Dept 2006]), the Board demanded repayment of public funds as *665 overpayments and disqualified expenditures under Administrative Code § 3-710 (2) (a) and (b). There, as here,
“[t]he Board contended] that in addition to the principal campaign committees, the individual defendants were personally liable as well for repaying public matching funds given to the respective campaign committees, which the Board later found were undocumented and, therefore, disqualified campaign expenditures, and argue [d] that they have failed to timely challenge the Board’s final audits finding” (38 AD3d at 77).
The Board attempted to hold the defendants personally liable under Administrative Code § 3-710 (2) (a) and (b).
The Ortiz Court found that candidates and committees are not personally liable under the Administrative Code.
“[W]here the Board has determined that a participating candidate, his or her principal committee or the principal committee’s treasurer has committed a violation or infraction, the candidate or treasurer shall be personally subject to civil penalties assessed by the Board; however, where the Board determines that payments made to a principal committee of a participating candidate were used for purposes other than qualified campaign expenditures, such committee, but not the candidate or committee treasurer, is responsible for paying to the Board an amount equal to such disqualified amount.” (38 AD3d at 81-82; see also Matter of Espada 2001 v New York City Campaign Fin. Bd., 59 AD3d 57 [1st Dept 2008].)
Here, the Board seeks to avoid Ortiz by assessing personal liability to petitioners under paragraph (c) instead of paragraphs (a) or (b) of section 3-710 (2). The attempt is misplaced for several reasons.
First, according to the Board’s calculations, there remain unspent funds in part because expenditures of $74,825 and $40,361 were disqualified. The Board denied the claims for want of documentation. This is precisely the fact situation which arose in Ortiz. To the extent that disqualification results in underspending there will always be an overlap between disqualification and unspent funds. It is tautologically true that disqualification will only result in a demand for repayment when there is underspending. If approved expenditures equal or exceed receipts, then disqualification under paragraph (b) becomes *666 moot. As such, the Board’s attempt to assess personal liability by merely labeling a disqualification as an unspent fund under paragraph (c) instead of a disqualified expenditure under paragraph (b) would empty Ortiz of any consequential significance.
Secondly, the language and reasoning of Ortiz were not limited to paragraphs (a) and (b) but apply with equal force to paragraph (c). The Court made it clear that penalties, but not repayments, were the personal responsibility of the candidate. In looking at the legislative history of section 3-710, the Court stated that
“the fallacy of the Board’s position is clearly evidenced by the fact that it unsuccessfully attempted to amend [section 3-710] to incorporate such advisory opinion and commonsense interpretation by adding the requirement that the participating candidate (but not the committee treasurer), as well as the candidate’s principal committee, shall repay any amount determined to have been used for purposes other than qualified campaign expenditures. However, the City Council, in adopting Local Law No. 58 (2004) of the City of New York, adopted many other amendments to the Act proposed by the Board, but omitted such proposed amendment.” (Ortiz,, 38 AD3d at 83.)
The Court, in Ortiz, described the legislative history of section 3-710 and did not separate paragraphs (a) and (b) from paragraph (c). In fact, it would make little sense to do so since it seems unlikely that a legislative body would exempt misspent funds from personal responsibility while including unspent funds.
As well, it should be noted that paragraph (c) specifically provides that in the case of unspent funds, the “candidate and committee shall use such excess funds to reimburse the fund.” (Administrative Code § 3-710 [2] [c] [emphasis added].) Clearly, repayment is to come from “such excess funds” referring to funds received by the committee. While the candidate has a responsibility to see that the committee returns those funds, there is no obligation to reach into other funds, such as personal assets, to repay the Board.[6] As highlighted by the Ortiz Court, if personal liability other than penalties is to be found, it should *667 be accomplished by clear legislative directive. (See Ortiz, 38 AD3d at 82-83.)
As to petitioner Wilson, while there is reference in the Administrative Code to various obligations of the candidate, there is nowhere in the law provision for separate liability of the treasurer for repayment. Matter of Espada 2001 (supra) reaffirms that a treasurer is personally liable for penalties, but does not extend the principle to campaign committee repayment obligations.
B. The $93,000 Transfer
Aside from the disqualified expenditures of $74,825 and $40,361, for which documentation was rejected as untimely, the Board also included a demand for “repayment” of the $93,000 transfer to the 2001 campaign.[7] But, as previously noted, the $93,000 owed by the 2001 campaign has already been paid to the Board. The transfer was lawful. In fact, payment was required by the Board as a prerequisite to application for public funds in 2005. As well, it has already been discounted from the funds qualified for matching. The campaign does not seek to have it included in measuring receipts for purposes of matching. None of the $93,000 came from public funds. It came from private, unmatched, contributions made prior to the campaign’s application for public funds.
The Board would have the committee and petitioners pay the $93,000 a second time by deducting $93,000 from pubhc funds paid to the committee in 2005, even though public funds were not used to pay the 2001 debt.
1. Are the Funds Used to Pay the $93,000 Transfer “Receipts”?
Paragraph (c), in defining “unspent funds,” applies a priority principle. It measures total “receipts” from all sources against approved expenditures. If a candidate collects $100,000 in private contributions, only $10,000 of which are matchable, the candidate receives $40,000 in matching funds. Thereafter, if the *668 candidate only spends $30,000 on the campaign, then the candidate has $110,000 in “unspent” funds ($140,000 minus $30,000). As such, the expenses are not apportioned, rather, the candidate would repay all $40,000 to the Board. In other words, repayment of public funds to the Board takes priority and the campaign is not allowed to keep any of the matching funds.
In this case, the Board seeks to include the $93,000 in the calculation of “receipts” for purposes of paragraph (c), but not include it in receipts for matching purposes under paragraph (a), not because the contributions were not qualified for matching, but merely because it was spent to pay the Board for a prior campaign debt.
If the committee had raised the money to pay down the prior debt through the 2001 campaign, or had raised money through a segregated account in the 2005 campaign (Board Rules § 5-01 [n] [2]), then, as here, the moneys raised to pay the debt would not be considered receipts for matching funds. As well, however, the Board would not count the funds as “receipts” for the unspent funds calculation under paragraph (c). In that case, there would not be a second deduction of $93,000 from public funds.
Here, as in the case of a segregated subaccount, the Board did not recognize $93,000 of the campaign’s receipts as qualified for matching funds solely on account of how they were spent, even though they were eligible for matching in all other respects. But here, in addition, the Board would hold that the $93,000 was still a receipt for paragraph (c) purposes, while not a receipt for paragraph (a) purposes: a distinction which is not explicitly authorized by the Administrative Code. There is no substantive reason to treat the discounted contributions as receipts merely because they were transferred to the 2001 account for payment to the Board rather than paid directly from a designated segregated account within the 2005 campaign. To do so would exalt form over substance.
2. Is the $93,000 Transfer “Allowable” but “Disapproved”?
The Board does not approve the transfer as a campaign-related expenditure, under paragraph (c), notwithstanding the fact that it was both lawful and mandated. In effect, the Board requires repayment of prior obligations to the Board and then, in addition, would start the candidate in the new campaign, after the obligation is paid, with a deficit in funds available from the Board. Any candidate who lawfully raises private contributions to pay a prior debt to the Board would not only be deprived of matching funds for those contributions but, in addition, would *669 face a reduced match for unrelated, private, matchable contributions not spent on the prior debt.
The Board did not find that the transfer was disqualified under paragraph (b). It was a lawful campaign-related expense under the Election Law. Yet the Board would disallow it under paragraph (c) creating, without legislative direction, a category of expenditure which would be disapproved under paragraph (c) while perfectly legal and not disqualified under paragraph (b). However, the net effect would be the same as if it had been disqualified under paragraph (b) since repayment is then required, and the consequence would be personal liability which was condemned in Ortiz.
Conclusion
In an article 78 petition, a reviewing court is limited to determining whether the agency determination is arbitrary and capricious or an abuse of discretion (see e.g. Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 230-231 [1974]). Normally, the court defers to an agency’s reasonable interpretation of statutes and regulations (see Matter of Cortlandt Nursing Care Ctr. v Whalen, 46 NY2d 979, 980 [1979]). “That discretion, however, cannot be invoked outside the law” (see Matter of Barry v O'Connell, 303 NY 46, 52 [1951], lv denied 279 App Div 1052 [1st Dept 1952]). “An agency may not, under the guise of administering the statute, ascribe a different or unreasonable meaning to its terms” (see Matter of SoHo Community Council v New York State Liq. Auth., 173 Misc 2d 632, 639 [Sup Ct, NY County 1997]).
Under that standard, the Board’s decision was unreasonable in that it counts the $93,000 as a receipt for some purposes (unspent funds) while simultaneously disallowing it as a receipt for other purposes (matching funds). It would approve the expenditure for paragraph (b) purposes, since it was lawful, mandated and campaign related, but disapprove it for paragraph (c) purposes, thereby circumventing Ortiz. In this way, it would twice penalize the campaign by denying a match and then again deducting it from recognized expenditures, despite the fact that no public funds were used to pay the prior debt.
It is illogical and inequitable to include the $93,000 as a 2005 campaign receipt for unspent funds calculations but not for matching fund calculations. It is illogical and inequitable to consider the $93,000 expenditure as an allowable expense for *670 misspent funds calculations while disapproving it for unspent funds calculations. It is illogical and inequitable to charge the contributions as a 2005 receipt while discounting it as a 2005 expenditure for balance sheet purposes.
Accordingly, the article 78 petition is granted to the extent that Ms. Fields, Mr. Wilson, and the committee are not personally liable for the repayment of unspent funds; but they are liable for penalties.[8]

. (See Rules of New York City Campaign Finance Board [52 RCNY] § 1-02 [Board Rules] [defining “unspent” campaign funds under Administrative Code § 3-710 (2) (c) as funds left over after an election campaign has concluded, available to reimburse the Board for public funds disbursed to the campaign during the election].) In effect, the amount is receipts minus disbursements, with certain adjustments called for by law.

. In its letter dated September 28, 2007, the Fields campaign provided two points of “good cause.” First, “Latieffa Mackey, who organized and data entered all of the committee’s campaign finance information, lost her mother . . . and we were unable to locate her.” Ms. Mackey had “total responsibility for recordkeeping,” and kept files in her custody which the campaign did not receive until August. Second, the computer containing all of the Fields campaign finance information crashed, and the backup was in Ms. Mackey’s custody. The campaign reported it to the Board when it occurred. “Eventually, the committee was able to extract the memory onto a CD,” and submitted amendments with their Board Rules § 5-02 (a) petition. (See affirmation of Horowitz, exhibit L.)

. “Public matching funds are paid to a campaign based upon contributions reported by the campaign as matchable contribution . . . During the 2005 elections, private contributions of up to $250 from individuals who reside in New York City were matched at a rate of four dollars in public funds for every one dollar in private contributions (up to $1,000 in public funds per contributor).” (See Board mem, June 4, 2008, at 4; see also Administrative Code §§ 3-703, 3-705 [1], [2].)

. Board Rules § 5-01 (n) states that transfers to political committees not involved in the election are not matchable.

. The overpayment was later adjusted to the reported amount of $330,420.

. There is no claim here that either Fields or Wilson wrongly converted campaign funds to personal assets or private expenditures.

. Since petitioners are not personally liable for unspent funds, as discussed infra, the issue here is whether the campaign is liable, again, for $93,000 even after it has paid the Board and, as well, discounted the receipt of $93,000 from its matchable funds. The committee, however, is not a party to the proceedings. Nevertheless, the Board seeks to include $93,000 in the assessment of personal liability against petitioners. As such, the discussion on this point is intended only as an alternate holding to the determination that there is no personal liability for petitioners under paragraph (c) and applies only to the calculation by the Board against petitioners for unspent funds.

. In light of the foregoing discussion, it is unnecessary to consider whether the Board improperly refused to review the documentation related to the dis-allowance of the $74,825 and $40,361 assessments.