*486 In this CPLR article 78 proceeding, petitioner challenges variances obtained in connection with the owners’ application to enlarge two adjacent, five-story, non-fireproof tenements, which were constructed some time prior to 1901. In or about October 2006, the owners filed an application with the New York City Department of Buildings (DOB) seeking a permit to add new sixth floors and seventh-floor penthouses to the buildings. Because the proposed expansion did not conform with certain provisions of the Multiple Dwelling Law, the owners sought waivers from DOB. In October 2007, DOB waived the Multiple Dwelling Law requirements and issued an alteration permit for the expansion; construction began shortly thereafter.
On November 25, 2008, BSA revoked the permit, finding that DOB did not have the authority to vary the application of the Multiple Dwelling Law. By the time the permit was revoked, the owners had already completed construction on the expansion of the buildings. In June 2009, in an effort to legalize the buildings, the owners sought the required variances from BSA. By resolution dated August 3, 2010, BSA granted the variance request with respect to the addition of the sixth floor.* BSA’s approval was contingent on the owners’ compliance with certain conditions, including the installation of an automatic wet sprinkler system in the common areas, cellar, and all apartment interiors, hard-wired smoke detectors and emergency lighting in all apartments and common areas, new fire escapes and ladders at the front and rear of the buildings, and replacement of wood apartment doors with self-closing metal doors.
In determining whether to grant the variances, BSA reviewed the owners’ application under Multiple Dwelling Law § 310 (2) (a), which applies to “buildings existing on” July 1, 1948. Since the buildings existed on that date, section 310 (2) (a) is, on its face, applicable. Petitioner argues that BSA utilized the wrong statutory subdivision, and that the applications should have been reviewed under Multiple Dwelling Law § 310 (2) (c). That section, which provides for more stringent criteria for variances, applies to “buildings erected or to be erected or altered pursuant to plans filed on or after” December 15, 1961. Since the alteration plans here were filed after that date, section 310 (2) (c) is also, on its face, applicable.
*487 Because both subdivisions (a) and (c) could reasonably apply to the owners’ request for variances, we find that the statute, when read as a whole, is ambiguous under the facts presented here. Although the correct interpretation of a statute is ordinarily an issue of law for the courts to decide, where the statutory language suffers from some fundamental ambiguity, courts should defer to the interpretation of the agency charged with administering the statute (Matter of Golf v New York State Dept. of Social Servs., 91 NY2d 656, 667 [1998]; Matter of New York City Council v City of New York, 4 AD3d 85, 97 [2004], lv denied 4 NY3d 701 [2004]). Thus, where the language of a statute is susceptible to conflicting interpretations, the agency’s interpretation is entitled to great deference, and must be upheld as long as it is reasonable (Golf, 91 NY2d at 658; Matter of Espada 2001 v New York City Campaign Fin. Bd., 59 AD3d 57, 64 [2008]; Matter of Beekman Hill Assn. v Chin, 274 AD2d 161, 167 [2000], lv denied 95 NY2d 767 [2000]).
In light of the ambiguity, we defer to BSA’s interpretation of the statute (see Beekman Hill, 274 AD2d at 167 [deferring to BSA’s construction of ambiguous provisions in the Zoning Resolution]). BSA’s decision to review the owners’ variance application under subdivision (a) was reasonable under the circumstances. The language of subdivision (a) plainly applies on its face since the “buildings exist[ed]” on July 1, 1948. The original version of subdivision (a), which remains essentially the same today, was enacted to govern variances for buildings constructed prior to July 1, 1948. BSA reviewed the history of the statute and its subsequent amendments, and reasonably concluded, based on that history, that subdivision (a) applies to pre-1948 buildings, whenever they are altered.
Petitioner points to nothing in the legislative history that conclusively establishes that subdivision (c) should be applied here. Furthermore, BSA reasonably concluded that if one were to adopt petitioner’s view that subdivision (c) applies to alterations of pre-1948 buildings, it would render subdivision (a) largely superfluous. Finally, there are rational policy reasons supporting BSA’s interpretation of the statute, because subjecting owners wishing to alter pre-1948 buildings to the more stringent requirements of subdivision (c) could have a chilling effect on the making of improvements to those buildings most in need of renovation. Concur — Mazzarelli, J.P., Catterson, Moskowitz, Richter and Manzanet-Daniels, JJ.

 At BSA’s direction, respondents eliminated the seventh floor from the plans and now seek to legalize only the sixth floor.