■ In the Matter of JUNE EISLAND et al., Appellants, v NEW YORK CITY CAMPAIGN FINANCE BOARD et al., Respondents. [818 NYS2d 501]—

Judgment (denominated an order), Supreme Court, New York County (Marilyn Shafer, J.), entered on or about April 18, 2005, which denied the petition to set aside respondents' determination directing repayment of $142,306 in unspent campaign funds, unanimously reversed, on the law, without costs, the petition granted to the extent of excluding $130,000 from petitioners' repayment obligation, and respondents' counterclaim granted, in the aggregate amount of $12,306, against all

petitioners except EISPAC. The Clerk is directed to enter judgment accordingly.

Petitioner Eisland is a former member of the New York City Council. Prior to 2001 she did not participate in the public funds matching program for any of her City Council campaigns, instead raising funds through various authorized committees.

Petitioner Friends of June Eisland (Friends) raised contributions and made expenditures in connection with Eisland's City Council campaigns. As of January 11, 1998, Friends had a cash balance of $217,863, reflecting funds remaining from prior campaigns.

Eisland was a candidate for Bronx Borough President in the 2001 Democratic primary election. For that election, she participated in the public funds matching program. Under this program, a participating candidate receives $4 in public funds for every $1 of eligible private contributions (Administrative Code of City of NY § 3-705 [2]).

Petitioner Eisland 21st Century (21st Century) was Eisland's principal political committee for the 2001 primary election, although Friends was also authorized for that election. Friends spent approximately $85,000 of its $217,863 fund balance on that primary election.

In May 2001, a political committee called Citizens for Eisland (Citizens) was established. Eisland initially designed this committee to act "after the 2001 election cycle." In February 2002, Citizens was renamed EISPAC, which is also one of the petitioners herein.

On May 30, 2001, Friends transferred $100,000 to Citizens, and on July 11, 2001, an additional $30,000. When Citizens was renamed EISPAC, these funds became the funds of the renamed entity (Citizens/EISPAC).

On August 1, 2001, a staff member from respondent New York City Campaign Finance Board called a representative of the Eisland campaign about the transfers from Friends to Citizens/EISPAC. He suggested that, erring on the side of caution, the campaign should transfer the $130,000 back from Citizens/EISPAC to Friends. In the event the Board later determined that the money did not constitute matchable contributions under the Rules of the Campaign Finance Board (52 RCNY) § 5-01 (n), Friends could transfer the funds back to Citizens/EISPAC. The campaign representative replied that rather than transferring the money again, he would prefer to authorize Citizens/EISPAC as an additional fund-raising committee for the 2001 election, without conceding any interpreta-

tion of section 5-01 (n). The Board staff member agreed. The campaign subsequently submitted an amended certification, under protest, "filing" Citizens/EISPAC for the 2001 borough president election.

21st Century was eligible for matching funds and received $316,548 in public funds. After the election, 21st Century returned $4,071.28 in unspent funds as required by Administrative Code § 3-710 (2) (c).

In April 2003, the Board sent 21st Century, Friends and Citizens/EISPAC a draft audit report stating the campaign had to return $302,006 in unspent campaign funds. The Board also questioned whether certain claimed postelection campaign expenses were election-related.

In July 2003, the campaign responded, arguing that Friends' opening balance of $217,863 should not have been included in the unspent campaign funds calculation, and that the transfers from Friends to Citizens/EISPAC were permissible. It also contended that certain legal expenses in connection with the audit were legitimate postelection expenditures.

In January 2004, the Board sent a final audit report covering 21st Century, Friends, and Citizens/EISPAC. The report determined that $142,306 in unspent campaign funds were to be returned. The following month, 21st Century filed an administrative petition, arguing that Citizens/EISPAC filed for the 2001 election "under protest," and that "filing" for the election was not the same as "authorized" for the election. It contended that Citizens/EISPAC was not "involved" in the election.

The Board reaffirmed the final audit report. It found that if Citizens/EISPAC had not been certified for the 2001 election, the campaign would not have received any public funds under the matching funds formula. The Board further found that the amendment to the certification, albeit made "under protest," had a binding legal effect irrespective of the level of activity engaged in by Citizens/EISPAC during the campaign. The Board reasoned that a campaign cannot accept the benefits of the certification (i.e., receipt of public funds) without also incurring the full range of the program's requirements, including repayment.

Petitioners thereafter commenced this CPLR article 78 proceeding challenging the Board's findings. Respondents answered and counterclaimed for $142,306 as reimbursement for unspent campaign funds. In its reply memorandum of law, but not in their answer to respondents' counterclaim, petitioners argued that, should respondents prevail on their counter-

claim, all the expenses of bringing an administrative proceeding and the article 78 proceeding constitute payments in connection with the 2001 election and should be deducted from the amount owed.

The IAS court denied the petition and dismissed the proceeding, finding that the Board's inclusion of $217,863 of surplus funds when determining unspent funds for the purpose of computing reimbursement was neither arbitrary nor capricious and was consistent with the Board's intention to preserve public funds utilized in this program. The court also held that the change of designation of Citizens/EISPAC "under protest" was of no effect since petitioners did not timely raise a challenge when the designation was made. With respect to the transfer of the $130,000 from Friends to Citizens/EISPAC, the court noted that even if funds are not eligible to be matched with public funds, those funds should not be exempt from the computation of unspent funds subject to the return obligation. The court did not address the issue of whether the repayment obligation should be reduced by the costs of the administrative and court proceedings in connection with the 2001 election. It also denied respondents judgment on the counterclaim.

As in effect for the 2001 election, 52 RCNY 5-01 (n) stated: "The following will be presumed to consist entirely of contributions claimed to be matchable: (1) transfers . . . from a political committee that is involved in an election in which the candidate is currently a participant to a political committee that is not involved in that election . . . . An amount equal to the amount of public funds the participant is otherwise eligible to receive for such matchable contribution claims shall be deducted from the public funds paid to the participant."

The rule thus contains a presumption that the transfers consisted of matchable contributions which, if successfully rebutted, should not result in a public funds deduction. Petitioners here successfully rebutted that presumption with respect to the $130,000 transferred from Friends to Citizens/EISPAC.

The $130,000 transfer in question was part of the $217,863 raised by Friends prior to 1998 to support Eisland's City Council campaigns. Petitioners did not make a claim for matching funds for any contributions received prior to January 12, 2001, and that was for Eisland's borough president campaign. Respondents acknowledged this sum was "surplus funds." 52 RCNY 1-07 (a) provided, in pertinent part, at the point relevant herein: "Funds originally received for elections other than the election in which the candidate is currently a participant . . . may not be claimed as matchable contributions . . . This rule applies to surplus

funds." This is precisely the situation here. Since the $130,000 transfer did not constitute matchable contributions, it would not have resulted in a loss of public funds pursuant to section 5-01 (n).

Petitioners should not have been required to designate Citizens/EISPAC as filing for the 2001 borough president election in order for the Eisland campaign to be deemed eligible for matching funds. Without such designation, the $130,000 transfer (which was permissible under 52 RCNY 1-03 [a] [3] because it took place before the Eisland campaign received public funds) would have reduced the amount of the campaign's surplus funds under section 1-07 (b) (2) by the same amount. This, in turn, impacts the campaign's repayment obligation to the public funds matching program.

Administrative Code § 3-710 (2) (c) provided: "If the total of contributions, other receipts, and payments from the fund received by a participating candidate and his or her authorized committees exceed the total campaign expenditures of such candidate and committees for all covered elections held in the same calendar year . . . such candidate and committees shall use such excess funds to reimburse the fund for payments received by the principal committee from the fund during such calendar year." Although respondents argue that candidates who move funds among multiple committees would thus be able to reduce their repayment obligations, the Administrative Code and Board Rules permit such transfers (*see* Administrative Code § 3-702 [9]; 52 RCNY 1-02, 1-07 [b] [2]). Absent ambiguity, courts should construe the words of a statute so as to give effect to the plain meaning of the words used (*Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 107 [1997]). Thus, the computation of Citizens/EISPAC's repayment obligations should be reduced by $130,000.

We have considered petitioners' remaining arguments and find them to be without merit.

Turning now to respondents' counterclaim against all petitioners in the amount of $142,306, for the reasons stated above, the counterclaim should be granted in the amount of $12,306 against all petitioners except Citizens/EISPAC. Petitioner Eisland is liable because she is the candidate (Administrative Code § 3-710 [2] [c]); 21st Century and Friends are liable because they are authorized committees (*id.*).

Finally, petitioners contend that any amount owed to respondents should be reduced by the legal fees they incurred in responding to the Board's audit and in the ensuing administrative and judicial review. This argument was made for the first

time in petitioner's reply brief to this Court. Since this issue was not raised before the administrative agency, it is unpreserved for review (*see Matter of Fanelli v New York City Conciliation & Appeals Bd.*, 90 AD2d 756, 757 [1982], *affd* 58 NY2d 952 [1983]). In any event, legal expenditures do not qualify as a "routine activity" for the purpose of postelection expenditures that can be deducted before repaying unspent campaign funds (52 RCNY 5-03 [e] [2] [iii]). These expenses are not deductible in the computation of reimbursable unspent funds. Concur— Friedman, J.P., Williams, Gonzalez and Sweeny, JJ.