(February 8, 2011)

■ In the Matter of C. VIRGINIA FIELDS et al., Respondents, v NEW YORK CITY CAMPAIGN FINANCE BOARD, Appellant. [918 NYS2d 15]—

Order, Supreme Court, New York County (James A. Yates, J.), entered January 16, 2009, which granted the petition to the extent of absolving petitioners from personal liability for repayment of unspent campaign funds, unanimously affirmed, without costs.

Respondent New York City Campaign Finance Board (CFB) administers the campaign finance program established in 1988 by the New York City Campaign Finance Act (Administrative Code of City of NY § 3-701 *et seq.*). The program provides public

matching funds for eligible candidates running for the offices of mayor, comptroller, public advocate, borough president, and City Council member who agree to comply with certain conditions, including limitations on expenses and campaign contributions, and the submission of documentation and other proof of campaign expenditures as requested by CFB (Administrative Code § 3-703; *see generally New York City Campaign Fin. Bd. v Ortiz*, 38 AD3d 75 [2006]).

Payment to a candidate is based upon a preliminary review of the matchable contribution claims provided by the campaign (*see* CFB Rules [52 RCNY] § 5-01 [b], [g]). At the conclusion of a post-election audit of the receipts and expenditures reported by the candidate in disclosure statements, as well as any receipts and expenditures not reported but discovered by CFB during its post-election audit, a candidate may be required to return all or a portion of the public funds received, pursuant to Administrative Code § 3-710 (2) (a) (liability for overpayments of public matching funds), (b) (liability for funds used for disqualified campaign expenditures) and/or (c) (liability for unspent funds up to the amount of public funds received).

In 2004, CFB ordered petitioner C. Virginia Fields's 2001 campaign to repay $92,547 in public funds in connection with her successful 2001 run for Manhattan Borough President. Because Fields could not qualify for public funding for her 2005 mayoral campaign unless that debt was repaid (52 RCNY 5-01 [f] [3]), on October 7, 2004, her 2005 campaign lawfully transferred $93,000 raised for the 2005 race to her 2001 committee to repay the debt.

On May 31, 2005, Fields submitted a candidate certification form to be eligible for public matching funds for the 2005 race (*see* Administrative Code § 3-703 [1] [c]; 52 RCNY 2-01). Fields listed petitioner Milton Wilson as the treasurer of petitioner New Yorkers for Fields, which was designated as Fields's principal 2005 campaign committee. Based on its preliminary review of Fields's certification, CFB approved three separate matching funds payments at a four-to-one ratio, totaling $1,459,636.

On December 26, 2006, CFB sent Wilson a report of a draft audit covering the period January 12, 2003 through January 11, 2006 that raised 12 possible campaign violations and determined that the 2005 campaign "may be required to repay the greater of $337,340 due to an overpayment of public funds . . . and $187,637 in unspent campaign funds . . . Any repayment obligations are owed by the committee, the candidate, and the treasurer who are jointly and severally liable pursuant to law." The $337,340 public funds obligation was computed as follows:

| | | |
|---|---|---|
| Claimed Matchable Contributions | $ | 395,647 |
| Less: | | |
| Invalid Claims (52 RCNY 5-01 [d]) | $ | 20,188 |
| Subtotal | $ | 375,459 |
| Less: | | |
| Matchable Adjustment (52 RCNY 5-01 [n]) | $ | 93,155 |
| Adjusted Gross Matchable | $ | 282,304 |
| x 4 | $ | 1,129,216 |
| Less: | | |
| Total Previous Regular Payable | $ | 1,466,556 |
| Overpayment | $ | (337,340) |

The $93,155 matchable adjustment was comprised of $155 in excess contributions to political committees and the $93,000 transfer to the 2001 Committee.

The $187,637 unspent funds calculation was computed as follows:

| | |
|---|---|
| Itemized Monetary Contributions | $ 1,826,645 |
| Other Receipts | $ 112 |
| Public Funds Payments | $ 1,459,636 |
| Subtotal | $ 3,286,393 |
| Less: | |
| Itemized Expenditures | $ 3,040,125 |
| Total Receipts Adjustment | $ 76,150 |
| Total Outstanding Bills | $ 65,269 |
| Adjustments to Disbursements | |
| (52 RCNY 1-03 [a]; 5-03 [e]) | $ (82,788) |
| Subtotal | $ 3,098,756 |
| Total Unspent Funds | $ 187,637 |

The adjustments to disbursements of $82,788 was comprised of "Non-campaign Related Expenditures" of $3,041; "Unallowable Post Election Expenditures" of $61,196; and "Uncashed Checks/Not Appearing on Bank Statements" of $18,551. The audit also found that the campaign failed to report 126 transactions totaling $74,597 that had appeared on its bank statements.

Despite being granted two extensions, the campaign did not respond to the draft audit report by the March 8, 2007 deadline or request additional time to respond. On June 11, 2007, CFB sent Fields and Wilson a "Notice of Alleged Violations, Proposed Penalties, and Opportunity to Respond," which sought $189,028 in penalties for 24 alleged violations, subject to reduction if the campaign responded to the notice by June 25, 2007. On June 12, 2007, CFB sent Fields and Wilson a letter affording them "a last and sole opportunity for the Campaign to respond [by July 3, 2007] to the repayment obligations [unspent campaign funds and public funds overpayments] before they are made final."

On or about June 26, 2007, the campaign submitted a response to the draft audit report in which it stated, among other things, that while CFB claimed unspent funds of $187,637 as of December 12, 2006, the committee's account balance was $0 as of that date. The committee also noted that in January 2006 it had conducted an internal audit "to correct all balances" in its financial disclosure statements for the period 2002 to 2005 and that as soon as mistakenly omitted entries were detected the campaign reported the additional expenditures to "correct the balances." As a result of this submission, at its July 20, 2007 meeting, CFB reduced the $189,028 penalty to $70,567 for 21 alleged violations.

On July 27, 2007, CFB issued s report of its final audit, which found that the campaign owed $180,597 in unspent campaign funds and $337,340 in overpayment of public matching funds, and was required to repay the greater amount.* CFB also found that the campaign had to pay the $70,567 in penalties. By letter dated November 29, 2007, CFB reduced the penalties from $70,567 to $36,767.

On September 28, 2007, the campaign filed a petition challenging the Board's determination (see 52 RCNY 5-02 [a]). Stating that there was good cause for the failure to timely respond to the draft audit report, namely a computer crash and difficulty in locating the person who organized and entered the committee's financial data, the campaign argued that the unreported $93,000 transfer to the 2001 committee should have been considered a receipt for matching funds purposes and an expenditure to reduce the alleged unspent campaign funds. The campaign also asserted that the unspent campaign funds should be reduced by the $46,631 in post-election payments, $2,368 in alleged non-campaign-related expenditures, and $74,825 in unreported transactions.

---

* The reduction in unspent funds from $187,637 to $180,597 was the result of the adjustment to disbursements being reduced from $82,788 to $75,748.

On December 13, 2007, after hearing argument, CFB, finding that no good cause existed for the late submission, denied the petition and reaffirmed the payment determination in the final audit report. On December 19, 2007, CFB issued its final determination letter which advised petitioners that "[t]he Campaign's public funds repayment obligation is therefore $330,420 [reduced from $337,340 due to withholding of $6,920 from the campaign's public funds payment during the election]. (The Campaign's unspent funds repayment obligation remains at $180,597; because this amount is less than the amount owed due to the overpayment, the Campaign's total public funds repayment obligation is $330,420.) In addition, the Campaign owes a total of $36,767 in penalties . . . ."

CFB demanded payment of the total of $367,187 no later than January 13, 2008. By letter dated January 3, 2008, in response to the campaign's request for clarification regarding its liability for the $330,420 public funds repayment obligation, CFB advised the campaign:

"Following the December 19, 2006 ruling of the Apellate Division, First Department, in *NYC Campaign Finance Board v Ortiz*, candidates and treasurers cannot be held personally liable for the repayment of public funds owed to the Board due to overpayments of public funds. Therefore, only Ms. Fields' campaign committee . . . is liable for the $330,420 repayment obligation resulting from the overpayment of public funds.

"However, notwithstanding Ms. Fields' lack of personal liability for this return obligation, she would not be eligible to receive public funds in a future election unless the entire $330,420 is returned to the Board.

"The *Ortiz* decision does not affect repayment obligations resulting from unspent funds. Therefore, Ms. Fields, her treasurer, and her campaign committee are jointly and severally liable for the $180,597 unspent funds repayment obligation. As you are aware, payment of the $330,420 repayment obligation would also satisfy this smaller repayment obligation."

On March 24, 2008, petitioners commenced this proceeding to challenge CFB's determination that they jointly and severally owed $180,597 in unspent funds and requested that CFB reduce the amount by (a) the $93,000 transfer, (b) valid expenditures totaling $48,999 that had been previously found to be non-campaign-related or improper post-election expenditures, and (c) $74,825 in previously unreported transactions. Petitioners did not challenge the finding that the committee was required to return the $330,420 overpayment of public funds. Nor did they challenge the assessment of $36,767 in penalties.

CFB asserted a counterclaim seeking an order directing the committee to repay $330,420 for the overpayment in funds, and directing the committee and Fields to repay $180,597 in unspent campaign funds. CFB stated again that payment of the larger amount would satisfy the smaller repayment obligation.

Supreme Court granted the petition to the extent of holding that petitioners were not personally liable for the repayment of unspent funds, pursuant to Administrative Code § 3-710 (2) (b) and (c), § 3-711 (1) and 52 RCNY 5-02 (a) (2). The court found that CFB circumvented *New York City Campaign Fin. Bd. v Ortiz* (38 AD3d 75 [2006]) and improperly penalized the campaign twice by denying a match for the $93,000 transfer and then deducting it from recognized expenditures, although public funds were not used to pay the prior debt. The court further found that Administrative Code § 3-710 (2) (c) specifically provided that public matching funds were to be repaid using "excess" funds, not the candidate's personal assets.

Administrative Code § 3-710 (2) (c), as in effect in 2005, provided: "If the total of contributions, other receipts, and payments from the fund received by a participating candidate and his or her principal committee exceed the total campaign expenditures of such candidate and committee for all covered elections held in the same calendar year or for a special election to fill a vacancy such candidate and committee shall use such *excess funds* to reimburse the fund for payments received by such committee from the fund during such calendar year or for such special election. Such reimbursement shall be made not later than ten days after all liabilities have been paid and in any event, not later than either the closing date of the final disclosure report, or the day on which the campaign finance board issues its final audit report for such participating committee, for such covered election, as shall be set forth in rules promulgated by the campaign finance board. No such *excess funds* shall be used for any other purpose, unless the total amount of the payments received from the fund by the principal committee has been repaid." (Emphasis added.)

Where statutory language is "clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (*Matter of Aquilone v Board of Educ. of City School Dist. of City of N.Y.*, 86 NY2d 198, 204 [1995] [internal quotation marks and citation omitted]). Although a long-standing interpretation of an agency charged with administering a statute "may be entitled to great weight unless manifestly wrong," such "commonsense" interpretation is of no avail if the statute is unambiguous (*see* McKinney's Cons Laws of NY,

Book 1, Statutes § 129). "[W]here, as here, the question is one of pure statutory construction, dependent only on accurate apprehension of legislative intent, judicial review is less restricted and there is little basis to rely upon any special competence or expertise of the administrative agency" (*Ortiz*, 38 AD3d at 81; *see also Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303, 312 [2005]; *Matter of Excellus Health Plan v Serio*, 2 NY3d 166, 171 [2004] ["a determination by the agency that runs counter to the clear wording of a statutory provision is given little weight" (internal quotation marks and citation omitted)]).

The express language of section 3-710 (2) (c) requires that in the case of unspent funds, the "candidate and committee shall use *such excess funds* to reimburse the fund" (emphasis added). This language clearly and unambiguously requires the candidate and all the committees to return funds left over after the election, up to an amount equal to the total public funds received, regardless of whether the leftover dollars came from private contributions made directly to the candidate or from public funds sent to the committee. However, it does not obligate the candidate to reach into other funds, such as personal assets, to repay CFB.

Here, the campaign stated in its response to the draft audit report that while CFB claimed unspent funds of $187,637, as of December 12, 2006, the committee's account balance was $0 and that after an internal audit it reported the additional expenditures to "correct the balances." Petitioners allege that "[a]t the time the draft audit report was sent to the campaign, it had no money in its bank account," and that the final audit report concluded that the campaign owed $180,567 (*sic*) in unspent campaign funds, "even though the campaign in fact had no money whatsoever." There is no claim that either Fields or Wilson wrongly converted campaign funds to personal assets or used them for private expenditures. As there were no excess funds available at the time of the final audit, petitioners are not personally liable for the unspent funds.

*Matter of Eisland v New York City Campaign Fin. Bd.* (31 AD3d 259 [2006]), which involved a dispute over an unspent funds obligation, does not require otherwise. While we found in *Eisland* that the petitioner was "liable [for that repayment] because she is the candidate" (31 AD3d at 263), the Eisland campaign had approximately $475,000 in private funds for the 2001 election, received $316,548 in public funds, and spent approximately $650,000. Therefore, the campaign had "excess funds" that it was obligated to return, pursuant to Administra-

tive Code § 3-710 (2) (c). Concur—Andrias, J.P., Saxe, Catterson and Freedman, JJ. **[Prior Case History: 23 Misc 3d 658.]**